## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| Campbell Family Trust, Jack Hornstein, Anne H. Bradley, Casey Leblanc, Jacqueline Peiffer, Joseph Lipovick, and Valderrama Family Trust, | : : : | Civil No. 2:15-cv-2923 |
| Plaintiffs, | : : | |
| v. | : : | Judge Frost |
| J.P. Morgan Investment Management, Inc., JP Morgan Funds Management, Inc. and JP Morgan Chase Bank, N.A., | : : : : | Magistrate Judge King |
| Defendants. | : : | |

## MOTION BY DEFENDANTS JP MORGAN FUNDS MANAGEMENT, INC. AND JPMORGAN CHASE BANK, N.A. TO DISMISS THE COMPLAINT

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants JP Morgan Funds Management, Inc. and JPMorgan Chase Bank, N.A. respectfully move the Court to dismiss the Complaint in its entirety as against them for failure to state a claim upon which relief can be granted.  The grounds supporting this motion are set forth in the attached memorandum.

Respectfully submitted,

/s/ Steven W. Tigges

Mark Holland (*pro hac vice*)
Valerie A. Haggans *(pro hac vice)*
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:    (212) 813-8800
Fax:    (212) 355-3333
Email:  mholland@goodwinprocter.com

Michael K. Isenman (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave NW
Washington, DC 20001
Tel:    (202) 346-4000
Fax:    (202) 346-4444
Email:  misenman@goodwinprocter.com

Steven W. Tigges (0019288), Trial Attorney
Bradley T. Ferrell (0070965)
ZEIGER, TIGGES & LITTLE LLP
41 South High Street
3500 Huntington Center
Columbus, OH 43215
Tel:    (614) 365-9900
Fax:    (614) 365-7900
Email:  tigges@litohio.com
        ferrel@litohio.com

*Attorneys for Defendants JP Morgan Funds
Management, Inc. and JPMorgan Chase Bank,
N.A.*

Dated:  December 21, 2015

ACTIVE/84327694.13

## MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF PLAINTIFFS' ALLEGATIONS ....................................................................2

A.     Procedural Background.................................................................................2

B.     The Administration and Sub-administration Contracts ...................................3

C.     Plaintiffs' Allegations Regarding Administration Fees..................................4

ARGUMENT ...............................................................................................................5

I.     The Complaint Does Not State A Claim Against The Sub-Administrator, Which Did Not Receive Administration Fees From The Funds. ............................................5

II.    The Complaint Does Not State A Claim Against The Administrator. ...............................8

    A.     The contracts between the JPM Sub-administrators and other funds cover different services than the Administration Agreement's services. .........................9

    B.     The contracts between other administrators and other mutual funds cover different services from the Administration Agreement. ......................................11

    C.     The allegedly "duplicative" fees paid by the Funds under the Administration Agreement do not render those fees "excessive."...................................12

CONCLUSION...........................................................................................................16

ACTIVE/84327694.13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...................................................................................................14

*Bovee v. Coopers & Lybrand C.P.A.*,
272 F.3d 356 (6th Cir. 2001) .......................................................................................2

*Butler v. Aetna U.S. Healthcare, Inc.*,
109 F. Supp. 2d 856 (S.D. Ohio 2000) ........................................................................9

*In re Dreyfus Mut. Funds Fee Litig.*,
428 F. Supp. 2d 342 (W.D. Penn. 2005)......................................................................8

*In re Eaton Vance Mut. Funds Fee Litig.*,
380 F. Supp. 2d. 222 (S.D.N.Y. 2005).........................................................................7

*In re Evergreen Mut. Funds Fee Litig.*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006).........................................................................6

*Goodman v. J.P. Morgan Investment Management, Inc.*,
No. 2:14-cv-414-GLF-NMK..........................................................................................2

*Green v. Fund Asset Management, L.P.*,
147 F. Supp. 2d 318 (D.N.J. 2001), *aff'd* 286 F.3d 682 (3d Cir. 2002)....................8

*Green v. Fund Asset Management, L.P.*,
245 F.3d 214 (3d Cir. 2001).........................................................................................6

*Greenberg v. Life Ins. Co. of Va.*,
177 F.3d 507 (6th Cir. 1999) .......................................................................................2

*In re Honda of America Mfg. Inc. ERISA Fee Litig.*,
661 F. Supp. 2d 861 (S.D. Ohio 2009) (Frost, J.).....................................................15

*Krinsk v. Fund Asset Management, Inc.*,
875 F.2d 404 (2d Cir. 1989).........................................................................................6

*Laborers' Local 265 Pension Fund v. iShares Trust*,
769 F.3d 399 (6th Cir. 2014) .......................................................................................6

ACTIVE/84327694.13

*Mintz v. Baron*,
    2006 WL 2707338 (S.D.N.Y. Sept. 19, 2006) ........................................................................6

*Mulbarger v. Royal All. Associates, Inc.*,
    10 F. App'x 333 (6th Cir. 2001) ............................ 9 *Pfeiffer v. Integrated Fund Services, Inc.*,
    371 F. Supp. 2d 502 (S.D.N.Y. 2005) .........................................................................................6

*Turner ex rel. David New York Venture Fund v. Davis Selected Advisers, LP*,
    --- Fed. Appx. ---, No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015) ....................15

*Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.*,
    371 F. Supp. 2d 845 (S.D. Tex. 2005) .......................................................................................7

**Statutes**

15 U.S.C. § 80a-35(b) ..........................................................................................................................5

15 U.S.C. § 80a-35(b)(3) ............................................................................................................... 1, 5-6

ACTIVE/84327694.13

## PRELIMINARY STATEMENT

Plaintiffs in this action allege that five mutual funds they own (the "Funds") were charged excessive advisory and administration fees in violation of Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b). This case is related to *Goodman v. J.P. Morgan Investment Management, Inc.*, No. 2:14-cv-414-GLF-NMK ("*Goodman*"), where this Court previously resolved a motion to dismiss involving advisory fees received by defendant J.P. Morgan Investment Management, Inc. ("JPMIM" or the "Adviser"). The Complaint in this action differs from the *Goodman* complaint, however, by naming two additional defendants and by alleging a new theory of liability against them involving administration fees that this Court has not previously addressed. This new theory of liability fails to state a claim against these two new defendants, and they both should be dismissed from this action.[1]

The claims against defendant JPMorgan Chase Bank, N.A. ("JPMCB" or the "Sub-administrator") should be dismissed because Section 36(b) prohibits an action "against any person *other than the recipient*" of the allegedly excessive fees paid by a mutual fund. 15 U.S.C. § 80a-35(b)(3) (emphasis added). The Complaint does not – and cannot – allege that the Funds paid the Sub-administrator any administration fees. As a matter of law, therefore, the Sub-administrator cannot be a defendant.

Plaintiffs assert claims against defendant JP Morgan Funds Management, Inc. ("JPMFM" or the "Administrator") based on allegations that the administration fees the Funds paid to the Administrator were excessive because they were higher than administration fees charged to

---

[1] In Counts I through III, the Complaint asserts claims against defendant JPMIM that are similar to the claims asserted against the Adviser in the *Goodman* action. The defendants are not asking the Court to revisit its decision in that case; rather JPMIM is answering the Complaint with respect to Counts I through III. This motion to dismiss is filed solely on behalf of the two new defendants regarding the claims asserted against them: Counts IV through VIII. Therefore, the new defendants are seeking dismissal of the Complaint in its entirety as to claims against them.

other, unaffiliated, mutual funds.  But the very contracts upon which the Complaint relies refute

any notion that the services provided to the Funds and to the unaffiliated funds were the same.

As a result, the allegations against the Administrator lack facial plausibility and fail to state a

claim.

## STATEMENT OF PLAINTIFFS' ALLEGATIONS[2]

### A.  Procedural Background

The plaintiffs in *Goodman* – Nancy Goodman and Jacqueline Peiffer – filed a complaint

alleging that JPMIM charged excessive investment advisory fees to three JP Morgan mutual

funds in which they invested.  No. 2:14-cv-414, Doc. No. 1.  In its decision denying JPMIM's

motion to dismiss, the Court concluded that the  "arguments as to why its fees are not excessive

... are more appropriate for summary judgment," and "express[ed] no opinion ... on whether

Plaintiffs will be able to produce evidence to meet the notably high standard for imposition of

§36(b) liability."  No. 2:14-cv-414, Doc. No. 40, at 8-9.

Seven months later, plaintiffs' counsel in *Goodman* filed the Complaint in this case.  The

plaintiffs here are Jacqueline Peiffer, who is also a plaintiff in *Goodman*, and six additional

individuals and entities:  Campbell Family Trust, Jack Hornstein, Anne H. Bradley, Casey

Leblanc, Joseph Lipovich, and Valderamma Family Trust (collectively, "Plaintiffs").  The

Complaint alleges that Plaintiffs own shares in the five Funds. The Funds are not the same

mutual funds at issue in *Goodman*.

---

[2]     The Statement of Plaintiffs' Allegations is based upon the allegations in the Complaint and on the
documents referred to in the Complaint.  The Court can consider documents "referred to in the complaint" without
converting a motion to dismiss into a motion for summary judgment, even if they are "not formally incorporated by
reference."  *Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999); *see also Bovee v. Coopers &
Lybrand C.P.A.*, 272 F.3d 356, 360-61 (6th Cir. 2001).  For the Court's convenience, the Declaration of Elizabeth S.
David ("David Decl."), attached as Exhibit 1 to this motion, attaches copies of documents referred to in the
Complaint that are cited in this motion, each of which was publicly filed with the Securities and Exchange
Commission ("SEC").  The Administrator and the Sub-administrator accept the Complaint's allegations, including
any allegation that the referenced documents are currently in force, solely for the purposes of this motion to dismiss.

The Complaint asserts claims against the Administrator and the Sub-administrator in Counts IV through VIII.  In these counts, the Complaint alleges that the Administrator and Sub-administrator charged excessive fees for administration services.[3]

**B.**     **The Administration and Sub-administration Contracts**

The Funds, like most mutual funds, do not have their own employees or facilities.[4] Instead, the Funds retain external service providers to conduct their operations.[5]  The Administrator and the Funds have entered into an "Administration Agreement" under which the Administrator provides certain administration services to each of the Funds in exchange for a fee.[6]  The Sub-administrator is not a party to the Administration Agreement.

The Administrator has, in turn, entered into a separate contract with the Sub-administrator (the "Sub-administration Agreement") under which the Sub-administrator provides certain services to the Funds on behalf of the Administrator.[7]  The Funds are not parties to the Sub-administration Agreement.  The Complaint does not – and cannot – allege that the Funds pay any fees directly to the Sub-administrator for administration services.[8]

---

[3]      The plaintiffs in *Goodman* have moved to amend the complaint in that case to add the Administrator and Sub-administrator as defendants, and assert similar claims against them.  No. 2:14-cv-414, Doc. No. 55.  JPMIM has opposed that motion.  No. 2:14-cv-414, Doc. No. 57.  The plaintiffs in *Goodman*, along with Plaintiffs here, have jointly moved to consolidate the *Goodman* case and this case.  No. 2:15-cv-2923, Doc. No. 20; No. 2:14-cv-414, Doc. No. 61.  All defendants in both cases intend to oppose that consolidation motion.

[4]      Compl. ¶ 42.

[5]      Compl. ¶ 42.

[6]      Compl. ¶¶ 11-12, 44, 116.  A copy of the Administration Agreement is attached as David Decl. Exhibit A.

[7]      Compl. ¶¶ 13, 45, 118-19.

[8]      Separately, the Funds pay custodial fees to the Sub-administrator, but the Complaint does not challenge those custodial fees as excessive.  *See* Compl. ¶¶ 131-32.  In addition, although not directly relevant to this motion, the Adviser and the Funds have entered into Investment Advisory Agreements pursuant to which the Adviser provides investment advisory services to each of the Funds.  Compl. ¶¶ 43, 49-51.  Neither the Administrator nor the Sub-administrator is a  party to the Investment Advisory Agreements.

ACTIVE/84327694.13

C.    **Plaintiffs' Allegations Regarding Administration Fees**

The Complaint alleges in Counts IV through VIII that (i) the fees the Funds pay the Administrator are "excessive" in violation of Section 36(b) when compared to administration fees paid by other funds, and (ii) the fees the Sub-administrator receives from the Administrator are excessive as well.[9]

First, the Complaint alleges that the fees charged under the Administration Agreement are higher than the fees that an allegedly affiliated entity, J.P. Morgan Investor Services Co., or the Sub-administrator (collectively the "JPM Sub-administrators") charge mutual funds unaffiliated with JP Morgan.[10]  The Complaint identifies two agreements –a ProShares Funds Agreement and an EQ Funds Agreement – under which the JPM Sub-administrators provide services to the Pro Shares Funds and the EQ Funds respectively for lower fees than the Administrator charges the Funds.[11]  The Complaint alleges that the services provided pursuant to the ProShares Funds Agreement and the EQ Funds Agreement are "the same or substantially the same as [the] administration services provided to the Funds pursuant to the [] Administration Agreement."[12]

Second, the Complaint alleges that the fees charged under the Administration Agreement are higher than the fees charged by other mutual fund administrators.[13]  The Complaint identifies two other administrators, State Street and US Bank, which provide mutual fund administration

---

[9]        Compl. ¶¶ 116-61.

[10]       Compl. ¶ 124.

[11]       Compl. ¶¶ 125-26.  Copies of the ProShares Funds Agreement and the EQ Funds Agreement are attached as David Decl. Exhibit C and Exhibit D respectively.

[12]       Compl. ¶¶ 125-127.

[13]       Compl. ¶ 141-52.

ACTIVE/84327694.13

services.[14]  The Complaint alleges that State Street provides services to certain MetLife funds and that US Bank provides services to the Bridge Builder Bond Fund for lower fees, even though State Street and US Bank "provide the same or substantially the same administration services as are provided to the Funds pursuant to the ... Administration Agreement."[15]

Finally, the Complaint alleges that the fees charged under the Administration Agreement are "duplicative" of fees the Funds pay to other service providers, such as the Shareholder Servicing Agent and the Transfer Agent.[16]

## ARGUMENT

I.     **The Complaint Does Not State A Claim Against The Sub-Administrator, Which Did Not Receive Administration Fees From The Funds.**

Section 36(b) creates a statutory cause of action for a mutual fund shareholder to recover allegedly excessive fees paid by the fund, but that cause of action comes with a fundamental limitation:  the shareholder may only sue the entity to which the fund paid those fees.  The Complaint does not – and cannot – allege that the Funds have paid the Sub-administrator any fees for services provided under either the Administration Agreement or the Sub-administration Agreement.  The absence of that allegation is fatal to the Complaint's claims against the Sub-administrator.

---

[14]     Compl. ¶ 141.

[15]     Compl. ¶¶ 145, 150.  The Complaint alleges that State Street provides services to the Met Life Funds pursuant to a "MetLife Funds Agreement," and that US Bank provides services to the Bridge Builder Bond Fund pursuant to a "Bridge Builder Funds Agreement."  Copies of the MetLife Funds Agreement and the Bridge Builder Funds Agreement are attached as David Decl. Exhibit E and Exhibit F respectively.

[16]     Compl. ¶¶ 153-61.  The Complaint alleges that these two entities provide services pursuant to a Shareholder Servicing Agreement and a Transfer Agency Agreement.  Copies of the Shareholder Servicing Agreement and the Transfer Agency Agreement are attached as David Decl. Exhibit G and Exhibit H  respectively.

ACTIVE/84327694.13

Section 36(b) authorizes a cause of action against the recipient of "compensation … paid by [the] registered investment company." 15 U.S.C. §80a-35(b).[17]  The statute expressly prohibits an action against anyone other than that recipient:

> No such action shall be brought or maintained against any person *other than the recipient* of such compensation …, and no damages or other relief shall be granted against any person other than the recipient of such compensation.

15 U.S.C. § 80a-35(b)(3) (emphasis added).  Courts recognize that this provision means that "damages may be recovered only against the recipient of the compensation."  *Krinsk v. Fund Asset Management, Inc.*, 875 F.2d 404, 413 (2d Cir. 1989).[18]

Courts therefore repeatedly have dismissed Section 36(b) claims brought against entities or individuals other than the ones to whom the funds paid the purportedly excessive fees.  For example, in *Pfeiffer v. Integrated Fund Services, Inc.*, 371 F. Supp. 2d 502 (S.D.N.Y. 2005), the court dismissed a Section 36(b) claim for excessive administration fees brought against officers of the investment adviser.  The court explained that "nowhere in [this] complaint does [the plaintiff] allege that [the officers] have received administrative … fees."  *Id.* at 509.  According to the court, "[i]nstead, the complaint alleges that those fees were paid to" a different entity.  *Id.*  Similarly, in *Mintz v. Baron*, 2006 WL 2707338, at *3 (S.D.N.Y. Sept. 19, 2006), the court dismissed a Section 36(b) claim against an investment adviser involving "Rule 12b-1 fees" because the complaint did not allege that the adviser received any of those Rule 12b-1 fees.  *Accord In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 259 (S.D.N.Y. 2006) (dismissing officers and trustees of a mutual fund from Section 36(b) claims because the

---

[17]     A mutual fund is, of course, a type of registered investment company.

[18]     *See also Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 405 (6th Cir. 2014) (dismissing Section 36(b) claims against investment adviser because it was not the "recipient" of a lending fee charged by an affiliate); *Green v. Fund Asset Management, L.P.*, 245 F.3d 214, 226 n.11 (3d Cir. 2001) ("[Section 36(b)] authorizes suit only against the 'recipient' of the alleged excessive compensation and expressly forbids bringing suit against other parties.").

"Plaintiffs have failed to allege that the … Trustee/Officer Defendants received compensation for investment advisory services, and therefore their allegations do not meet the requirements of Section 36(b)(3).").

The Complaint here alleges that the Funds paid administration fees not to the Sub-administrator, but rather to the Administrator.[19]  The Complaint does not allege the existence of a contractual relationship between the Funds and the Sub-administrator.  Rather, the Complaint alleges a contractual relationship between the Funds and the Administrator, and a separate contract between the Administrator and the Sub-administrator.[20]  The Complaint alleges only that the Sub-administrator indirectly "receives *a portion* of the administration fees *paid to JPMFM [the Administrator]* by the Funds."[21]  And the Administration Agreement itself makes clear that the only entity the Funds compensate for providing services under that agreement is the Administrator.  The Administration Agreement does not provide for the Funds to make any payment to the Sub-administrator, which is not a party to that agreement.[22]

Plaintiffs cannot circumvent Section 36(b)'s statutory limitation by alleging that the Sub-administrator *indirectly* received some of the fees the Funds paid to the Administrator. "Allowing Plaintiff to maintain an action against" an affiliate "on the theory that it was an indirect recipient of the … fees would abrogate the limitation imposed by § 36(b)(3), and thwart Congress's judgment concerning the appropriate remedy for violations of § 36."  *Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845, 849 (S.D. Tex.

---

[19]     Compl. ¶¶ 12-13.

[20]     Compl. ¶¶ 116, 118-19.

[21]     Compl. ¶ 122 (emphasis added).

[22]     *See* Administration Agreement at Art. 5(A) ("[T]he Trust shall pay *the Administrator* compensation at an annual rate specified in Schedule A attached hereto.  Such compensation shall be calculated and accrued daily, and *paid  to the Administrator* ….") (emphasis added).

ACTIVE/84327694.13

2005) (dismissing Section 36(b) claim against investment adviser to whom the fund did not pay the challenged Rule 12b-1 fees).[23]

If mutual fund shareholders could pursue not only the service provider that a mutual fund pays directly, but also those entities or persons that the service provider, in turn, pays, then a Section 36(b) claim might lie against the service provider's employees and vendors even though they did not receive any payments from the fund.  Courts have rejected this expansive interpretation of the "recipient" requirement.  There is "no legal support for the concept that section 36(b), contrary to its express language, applies to indirect recipients of compensation." *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 351-52 (W.D. Penn. 2005) (dismissing Section 36(b) claim against fund directors who were not paid the allegedly excessive advisory fees).  Thus, the officers of an adviser, who received salaries from the adviser, were not themselves the recipients of any advisory fees from the funds and could not be sued under Section 36(b).  *Green v. Fund Asset Management, L.P.*, 147 F. Supp. 2d 318, 330 (D.N.J. 2001), *aff'd* 286 F.3d 682 (3d Cir. 2002).  Plaintiffs here should not be allowed to undermine Section 36(b)'s limitation.

## II.    The Complaint Does Not State A Claim Against The Administrator.

The Complaint's allegations against the Administrator fail to state a claim because all of the non-conclusory allegations are refuted by the very agreements that the Complaint purports to rely upon.

The gravamen of the claims against the Administrator is that:  (i) the services the Administrator provides under the Administration Agreement are substantially the same as services that either the Sub-administrator or third parties provide to other funds; (ii)  the

---

[23]     *Accord. In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 236-38 (S.D.N.Y. 2005) (dismissing Section 36(b) claim against adviser and trustees because they were not recipients of allegedly excessive Rule 12b-1 fees.).

ACTIVE/84327694.13

Administrator receives higher fees for providing these same services to the Funds; and so (iii) the administration fees paid by the Funds must be excessive.  The first premise is patently incorrect, undermining the whole logic of Plaintiffs' claim against the Administrator.

The Complaint compares the services the Administrator provides the Funds to services provided under two other sets of agreements: (1) agreements between the JPM Sub-administrators and other unaffiliated mutual fund clients,[24] and (2) agreements between other administrators and other mutual funds.[25]  The Complaint's only non-conclusory allegations that the Administrator's fees are excessive rely upon the comparisons of services provided under the cited agreements.  As shown below, those agreements, which the Court may consider on this motion,[26] refute any suggestion that the services provided are  "the same or substantially the same."[27]

### A. The contracts between the JPM Sub-administrators and other funds cover different services than the Administration Agreement's services.

The Complaint compares the services and fees provided under the Administration Agreement to the services and fees under agreements between the JPM Sub-administrators and two outside groups of mutual funds:  ProShares Funds and EQ Funds.  A comparison of the Administration Agreement with (i) the ProShares Funds Agreement and (ii) the EQ Funds

---

[24]     Compl. ¶¶ 124-40.

[25]     Compl. ¶¶ 141-52.

[26]     Although the allegations in a complaint are generally accepted as true for purposes of a motion to dismiss, the Court "is not bound to accept ... allegedly inferable 'facts' or conclusions which contradict documentary evidence ... referenced within[] the plaintiff's complaint."  *Mulbarger v. Royal All. Associates, Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001).  Courts in this District have granted motions to dismiss where the plaintiffs' characterization of what critical documents say are contradicted by the documents themselves.  For example, in *Butler v. Aetna U.S. Healthcare, Inc.*, 109 F. Supp. 2d 856 (S.D. Ohio 2000), the plaintiff sued her health insurance plan administrator for denial of benefits to which she allegedly was entitled because the insurance plan allegedly did not allow the administrator to recoup a previous overpayment.  In granting the administrator's motion to dismiss after a review of the plan documents at issue, the court concluded that "[c]ontrary to the assertions contained in [the] Complaint," the plan's "language undeniably permits Aetna to recoup an overpayment."  *Id.* at 860.

[27]     Compl. ¶¶ 127, 145.

ACTIVE/84327694.13

Agreement refutes any suggestion that the services provided are the same. In particular, the Administration Agreement lists a number of services that the Administrator provides to the Funds that are *not* included in either the ProShares Funds Agreement or the EQ Funds Agreement. These include:

- Management of Blue Sky filings (Art. 2(h));

- Management of Form N-PX filings (Art. 2(i));

- Preparation of communications to shareholders (Art. 2(k));

- Review of operational and performance reports produced by organizations providing services to the Trusts/Funds (Art. 2(w));

- Management of contracts for the Trust (Art. 2(x));

- Review of marketing materials (Art. 2(cc)); and

- Preparation of proofs of claims for class action notices (Art. 2(dd)).[28]

Neither the Pro Shares Funds Agreement nor the EQ Funds Agreement includes any of these services.[29]

The Administration Agreement also contains a catch-all provision that requires the Administrator to "[p]erform *all* administrative services and functions of the Trust and each Fund to the extent administrative services and functions are not provided" in other agreements.[30] Neither the ProShares Funds Agreement nor the EQ Funds Agreement includes any similar catch-all provision.

---

[28] *See* Administration Agreement, Art. 2.

[29] *See* ProShares Funds Agreement, Sch. C; EQ Funds Agreement, Sch. B.

[30] *See* Administration Agreement, Art. 2(oo) (emphasis added).

10

**B.     The contracts between other administrators and other mutual funds cover different services from the Administration Agreement.**

The Complaint next compares the services and fees provided under the Administration Agreement to the services and fees provided under agreements between third parties and two outside groups of mutual funds:  MetLife Funds and Bridge Builder Bond Fund.[31]  A comparison of the Administration Agreement with the MetLife Funds Agreement and the Bridge Builder Funds Agreement again refutes any suggestion that the services provided are the same.

The Administration Agreement requires the Administrator to perform a number of services that are *not* contemplated by either the MetLife Funds Agreement or the Bridge Builder Funds Agreement.  These include:

- Providing personnel for Board meetings (Art. 2(e));

- Helping with the design, development, and operation of Funds for the Trust, (Art. 2(n));

- Preparing a quarterly tax compliance checklist (Art. 2(u));

- Reviewing operational and performance reports produced by other Trust service providers (Art. 2(w));

- Preparing, negotiating, and administering other service contracts for the Trust (Art. 2(x));

- Preparing expense authorizations and invoices (Art. 2(aa));

- Calculating Fund performance data for dissemination to information service providers covering the investment company industry (Art. 2(bb));

- Reviewing Fund marketing materials (Art. 2(cc));

- Preparing proofs of claims for class action notices (Art. 2(dd));

- Monitoring Trust compliance with its registration statement (Art. 2(gg)); and

---

[31]     Compl. ¶ 141-152.

ACTIVE/84327694.13

- Administering the Trust's privacy policy as required under Regulation S-P (Art. 2(nn)).[32]

Neither the MetLife Funds Agreement nor the Bridge Builder Funds Agreement requires the administrator to perform any of these services.[33]  In addition, neither the MetLife Funds Agreement nor the Bridge Builder Funds Agreement contains a "catch-all" provision similar to the Administration Agreement's Art. 2(oo).[34]

### C. The allegedly "duplicative" fees paid by the Funds under the Administration Agreement do not render those fees "excessive."

The Complaint's allegations about the allegedly "duplicative" fees paid by the Funds pursuant to the Administration Agreement also are refuted by the agreements at issue.  On its face, the Administration Agreement covers a different set of services than both the Shareholder Servicing Agreement and Transfer Agency Agreement.  The Administration Agreement details the "administrative services" that the Administrator provides to the Funds.[35]  The Shareholder Servicing Agreement governs "services for holders or beneficial owners of … shares of each Fund,"[36] and the Transfer Agency Agreement governs the services provided in connection with "transfer and dividend disbursing" for shareholders of the Funds.[37]  Of the 21 categories of services that the Administrator provides to the Funds pursuant to the Administration Agreement, Plaintiffs allege that at most three of them are "duplicative" of services provided to the Funds by

---

[32]     *See* Administration Agreement, Art. 2.

[33]     *See* MetLife Funds Agreement, Art. 5; Bridge Builder Funds Agreement, Services Schedule.

[34]     *See* Administration Agreement, Art. 2(oo) (requiring the Administrator to "[p]erform *all* administrative services and functions of the Trust and each Fund to the extent administrative services and functions are not provided" in other agreements) (emphasis added).

[35]     *See* Administration Agreement, Art. 2 ("[T]he Administrator shall perform or supervise the performance by others of administrative services in connection with the operations of the Funds.").

[36]     Shareholder Servicing Agreement, § I.

[37]     Transfer Agency Agreement, § 4.D.

12

the Shareholder Servicing and Transfer Agent.[38]  And the contracts themselves refute the

suggestion that that even those three allegedly duplicative services are the same.

       The Complaint alleges that the Administration Agreement requires the Administrator to

perform the following "duplicative" services, as compared to the Shareholder Servicing

Agreement:

- "[p]reparing … communications to shareholders";

- "[c]oordinating the mailing of prospectuses, notices, proxy statements, proxies, semi-annual and annual reports to shareholders, and other reports to Trust shareholders"; and

- "[s]upervis[ing] and facilitate[ing] the proxy solicitation process for all shareholder meetings, including a tabulation of shareholder votes."[39]

But the services detailed in the Shareholder Servicing Agreement are different.  First, the

Administrator must "[p]repare … communications to shareholders" *without limitation*, while the

Shareholder Servicing Agent needs only to manage *certain individual* shareholder

communications, such as "[s]hareholder inquiries … regarding account status and history, the

manner in which purchases and redemptions of the Shares may be effected and certain other

matters pertaining to the Trust."[40]  Second, the Administrator must "*[c]oordinate*" the

distribution of Fund documents like prospectuses and notices, but it is the Shareholder Servicing

Agent that must actually *effect* the "*forwarding* [of these documents] … to … [s]hareholders."[41]

       The comparison that the Complaint tries to draw between the Administration Agreement

and the Transfer Agency Agreement is likewise refuted by the contracts themselves.  The

---

[38]     *Compare* Compl. ¶¶ 157, 161 *with* Administration Agreement, Art. 2.

[39]     Compl. ¶ 157.  *See also* Administration Agreement, Art. 2(k) and (l).

[40]     *Compare* Administration Agreement, Art. 2(k) *with* Shareholder Servicing Agreement, § 2.2(a).

[41]     *Compare* Administration Agreement, Art. 2(l) *with* Shareholder Servicing Agreement, § 2.3(e) .

ACTIVE/84327694.13

Complaint alleges that the Administration Agreement requires the Administrator to perform the following three "duplicative" services, as compared to the Transfer Agency Agreement:

- "[p]reparing … communications to shareholders";

- "[c]oordinating the mailing of prospectuses … semi-annual and annual reports to shareholders"; and

- "[p]reparing and fil[ing], or supervis[ing] the preparation and filing of, all necessary Blue Sky filings."[42]

But, again, the services required under the Transfer Agency Agreement are different.  As explained, the Administrator has *overall responsibility* for *all* shareholder communications, while the Transfer Agent needs only to "prepar[e] and mail[]" *specific* communications, such as "[trade] confirmation forms … for all purchases and liquidations of shares of the Trust."[43]  And the Administrator must "*[c]oordinate*" the distribution of Fund documents, while the Transfer Agent is responsible for actually *effecting* the "*mailing* [of] shareholder reports and prospectuses."[44]  Finally, the Administrator is responsible for "*[p]repar[ing] and fil[ing] … all necessary Blue Sky filings*," but the Transfer Agency Agreement is clear that the Transfer Agent's responsibility with respect to the Funds' Blue Sky filings is much more limited:  "*The responsibility of [the Transfer Agent] for the Trust's blue sky registration status is solely limited* to the initial establishment of parameters provided by the Trust or the administrator for the vendor's system and the daily transmission of a file to such vendor in order that the vendor may provide reports to the Trust or the administrator for monitoring."[45]

*          *          *          *          *

---

[42]      Compl. ¶ 161.  *See also* Administration Agreement, Art. 2(h), (k), and (l).

[43]      *Compare* Administration Agreement, Art. 2(k) *with* Transfer Agency Agreement, § 4.D(vii).

[44]      *Compare* Administration Agreement, Art. 2(l) (emphasis added) *with* Transfer Agency Agreement, § 4.D(v) (emphasis added).

[45]      *Compare* Administration Agreement, Art. 2(h) (emphasis added) *with* Transfer Agency Agreement, § 4.J (emphasis added).

14

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Here, the fact that service providers charge *different* funds *different* fees to perform *different* services does not plausibly suggest that the services under the cited agreements are "the same or substantially the same," let alone that the fees paid by the Funds under the Administration Agreement are excessive.  A claim has "facial plausibility" only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  The differences among the services under the agreements identified in the Complaint mean that this Court cannot possibly draw any "reasonable inference" about the different fees charged, other than that different services merit different fees.

If the services are not the same, then the Complaint's conclusory allegation that the Funds pay the Administrator excessive fees is insufficient on its own to survive a motion to dismiss under Rule 12(b)(6).  *See In re Honda of America Mfg. Inc. ERISA Fee Litig.*, 661 F. Supp. 2d 861, 864-65 (S.D. Ohio 2009) (Frost, J.) (applying *Twombly* and *Iqbal* standard to dismiss complaint alleging breach of fiduciary duty under ERISA); *Turner ex rel. David New York Venture Fund v. Davis Selected Advisers, LP*, --- Fed. Appx. ---, No. 13-15742, 2015 WL 5692324, at *2 (9th Cir. Sept. 29, 2015) (affirming dismissal of Section 36(b) complaint where the plaintiff's "general allegations" amounted to no more than "a conclusory statement").  The claims against the Administrator therefore should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint fails to state a claim against either the

Administrator or the Sub-administrator.  Counts IV through VIII of the Complaint should

therefore be dismissed.

Respectfully submitted,

/s/ Steven W. Tigges

Mark Holland (*pro hac vice*)  Steven W. Tigges (0019288), Trial Attorney
Valerie A. Haggans *(pro hac vice)*  Bradley T. Ferrell (0070965)
GOODWIN PROCTER LLP  ZEIGER, TIGGES & LITTLE LLP
The New York Times Building  41 South High Street
620 Eighth Avenue  3500 Huntington Center
New York, NY 10018  Columbus, OH 43215
Tel:     (212) 813-8800  Tel:     (614) 365-9900
Fax:     (212) 355-3333  Fax:     (614) 365-7900
Email:  mholland@goodwinprocter.com  Email:  tigges@litohio.com
                                                    ferrel@litohio.com

Michael K. Isenman (*pro hac vice*)
GOODWIN PROCTER LLP
901 New York Ave NW
Washington, DC 20001
Tel:     (202) 346-4000
Fax:     (202) 346-4444
Email:  misenman@goodwinprocter.com

*Attorneys for Defendants JP Morgan Funds*
*Management, Inc. and JPMorgan Chase Bank,*
*N.A.*

Dated:  December 21, 2015

ACTIVE/84327694.13

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2015, I have caused the foregoing

Motion by Defendants JP Morgan Funds Management, Inc. and JP Morgan Chase Bank, N.A. to

Dismiss the Complaint and accompanying exhibits to be electronically filed with the Clerk of

Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to

the following:

        David P. Meyer
        Matthew R. Wilson
        Michael J. Boyle, Jr.
        MEYER WILSON CO., LPA
        1320 Dublin Road, Suite 100
        Columbus, OH 43215

        Andrew W. Robertson
        Robin F. Zwerling
        Jeffrey C. Zwerling
        Susan Salvetti
        ZWERLING, SCHACHTER & ZWERLING, LLP
        41 Madison Avenue
        New York, NY 10010

        Stephen J. Oddo
        Jenny L. Dixon
        Daniel L. Sachs
        ROBBINS ARROYO LLP
        600 B Street, Suite 1900
        San Diego, CA 92101


        /s/ Steven W. Tigges_____

ACTIVE/84327694.13