**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| Campbell Family Trust, Jack Hornstein, Anne H. Bradley, Casey Leblanc, Jacqueline Peiffer, Joseph Lipovich, and Valderrama Family Trust | Civil No. 2:15-CV-2923 |
| | Judge Frost |
| | Magistrate Judge King |
| Plaintiffs, | |
| v. | |
| J.P. Morgan Investment Management, Inc., JP Morgan Funds Management, Inc. and JPMorgan Chase Bank, N.A. | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
MOTION BY DEFENDANTS JP MORGAN FUNDS MANAGEMENT, INC.
AND JPMORGAN CHASE BANK, N.A. TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT ...................................................................................... 1

BACKGROUND REGARDING SECTION 36(b) ..................................................... 3

STATEMENT OF RELEVANT FACTS ..................................................................... 4

ARGUMENT .................................................................................................................... 8

I.  THE APPLICABLE PLEADING STANDARD ................................................. 8

II. RULE 8(a) IS SATISFIED WHERE THE FACTS ALLEGED SUPPORT A
    PLAUSIBLE INFERENCE THAT THE FEES ARE DISPROPORTIONATELY
    LARGE TO THE SERVICES PROVIDED AND ARE OUTSIDE AN ARM'S-
    LENGTH NEGOTIATED RANGE ..................................................................... 9

III. THE ADMINISTRATION FEES CHARGED TO THE FUNDS ARE OUTSIDE THE
     RANGE OF WHAT COULD BE NEGOTIATED AT ARM'S LENGTH ..................... 10

    A.  The Large Disparity Between the Administration Fees Charged to the Funds and
        the Unaffiliated Funds Cannot Be Explained by Any Meaningful Difference in
        the Administration Services ..................................................................... 10

        1.  The Large Disparity in Fees Charged ............................................. 11

        2.  The Significantly Higher Fees Charged to the Funds Are Not Justified by
            Any Meaningful Difference in the Administration Services Provided ........... 11

        3.  Unaffiliated Funds' Fees Were Negotiated at Arm's Length ..................... 12

    B.  Plaintiffs' Fee Comparisons Support a Plausible Inference that the Administration
        Fees Charged to the Funds Are Excessive ..................................................... 13

    C.  The Administrator Defendants' Arguments Regarding Purported Differences in
        Services, At Most, Raise Questions of Fact .................................................. 14

IV. THE SUB-ADMINISTRATOR, JPMCB, RECEIVED FEES AND THEREFORE IS
    LIABLE UNDER SECTION 36(b) ................................................................... 17

CONCLUSION ............................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Am. Chem. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*,
  No. 4:14-cv-00044, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014) ................................ 13, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................................ 8

*In re BlackRock Mut. Funds Advisory Fee Litig.*,
  No. 14-1165, 2015 WL 1418848 (D.N.J. Mar. 27, 2015) ............................................. *passim*

*Butler v. Aetna U.S. Healthcare, Inc.*,
  109 F. Supp. 2d 856 (S.D. Ohio 2000) ......................................................................... 15

*Curd ex rel. SEI Int'l Equity Fund v. SEI Inv. Mgmt. Corp.*,
  No. 13-7219, 2015 WL 4243495 (E.D. Pa. July 14, 2015) ................................................ 15

*Daily Income Fund, Inc. v. Fox*,
  464 U.S. 523 (1984) ..................................................................................................... 3, 4

*In re Davis New York Venture Fund Fee Litig.*,
  No. 14 CV 4318, 2015 WL 7301077 (S.D.N.Y. Nov. 18, 2015) ................................... 13, 14

*In re Dreyfus Mut. Funds Fee Litig.*,
  428 F. Supp. 2d 342 (W.D. Pa. 2005) ........................................................................... 18

*In re Eaton Vance Mut. Funds Fee Litig.*,
  380 F. Supp. 2d 222 (S.D.N.Y.) ................................................................................... 19

*Goodman v. J.P. Morgan Inv. Mgmt., Inc.*,
  No. 2:14-cv-414, 2015 WL 965665 (S.D. Ohio Mar. 4, 2015) ..................................... *passim*

*Green v. Fund Asset Mgmt., L.P.*,
  147 F. Supp. 2d 318 (D.N.J. 2001) ............................................................................... 19

*Green v. Fund Asset Mgmt., L.P.*,
  245 F.3d 214 (3d Cir. 2001) .......................................................................................... 19

*HDC, LLC v. City of Ann Arbor*,
  675 F.3d 608 (6th Cir. 2012) ........................................................................................ 9

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
   661 F. Supp. 2d 861 (S.D. Ohio 2009) ...................................................................... 14

*Jones v. Harris Assocs. L.P.*,
   559 U.S. 335 (2010) ...................................................................................................... 2

*Kamen v. Kemper Fin. Servs., Inc.*,
   500 U.S. 90 (1991) ......................................................................................................... 4

*Kasilag v. Hartford Inv. Fin. Servs., LLC*,
   No. 11-1083, 2012 WL 6568409 (D.N.J. Dec. 17, 2012)........................... 10, 13, 15

*Krinsk v. Fund Asset Mgmt., Inc.*,
   875 F.2d 404 (2d Cir. 1989)......................................................................................... 19

*Laborers' Local 265 Pension Fund v. iShares Trust*,
   769 F.3d 399 (6th Cir. 2014) ....................................................................................... 18

*The Lynn M. Kennis Trust v. First Eagle Inv. Mgmt., LLC*,
   No. 14-585, 2015 WL 5886178 (D. Del. Oct. 8, 2015) ........................................... 13

*McGlone v. Bell*,
   681 F.3d 718 (6th Cir. 2012) ......................................................................................... 9

*Mintz v. Baron*,
   No. 05-4904, 2006 WL 2707338 (S.D.N.Y. Sept. 19, 2006) .................................. 18

*Pfeiffer v. Integrated Fund Servs., Inc.*,
   371 F. Supp. 2d 502 (S.D.N.Y. 2005).......................................................................... 18

*Redus-Tarchis v. New York Life Inv. Mgmt. LLC*,
   No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015) ......................................... 13

*Rhodes v. R&L Carriers, Inc.*,
   491 Fed. Appx. 579 (6th Cir. 2012)............................................................................ 8, 9

*Turner ex. Rel. Davis New York venture Fund v. Davis Selected Advisers, LP*,
   No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015) ................................... 14

*Zehrer v. Harbor Capital Advisors, Inc.*,
   No. 14 C 789, 2014 WL 6478054 (N.D. Ill. Nov. 18, 2014)........................ 9, 13, 15

*Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.*,
   371 F. Supp. 2d 845 (S.D. Tex. 2005) ......................................................................... 17

**Statutes**

15 U.S.C. § 80a-35(b) ............................................................................................................ 3, 17

**Rules**

Fed. R. Civ. P. 8 ...................................................................................................................... 8

Plaintiffs respectfully submit this memorandum of law in opposition to the motion to dismiss filed by Defendants JP Morgan Funds Management, Inc. ("JPMFM") and JP Morgan Chase Bank, N.A. ("JPMCB") (collectively, the "Administrator Defendants") (Dkt. No. 32).

## SUMMARY OF ARGUMENT

The claims asserted against JPMFM and JPMCB are analogous to the claims this Court previously upheld against J.P. Morgan Investment Management, Inc. ("JPMIM") in the related action *Goodman v. J.P. Morgan Investment Mgmt., Inc*., No. 2:14-cv-414-GLF-NMK.[1]  JPMFM and JPMCB are both affiliates of JPMIM and respectively serve as Administrator and Sub-administrator of the Funds.[2]  Similar to the previously upheld claims for excessive investment advisory fees, Plaintiffs allege that the Administrator Defendants breached their fiduciary duty under § 36(b) of the Investment Company Act of 1940 (the "ICA") by charging excessive administration fees to the Funds.

In support of their claims against the Administrator Defendants, Plaintiffs rely on similar comparisons made in *Goodman* between the fees charged to the Funds in relation to the services provided and the fees charged to unaffiliated funds for the same or substantially the same services.  Four separate comparisons reveal that the Funds collectively pay the Administrator Defendants as much as $47.6 million more in administration fees each year than they would pay for administration services had the fees been negotiated at arm's length.

 The facts and circumstances pertaining to the administration fees charged to the Funds fall squarely within the standard of liability for evaluating § 36(b) claims established by the U.S.

---

[1]    The present motion to dismiss relates only to Counts IV-VIII of the Complaint asserted against the Administrator Defendants.

[2]    Plaintiffs bring this action on behalf of the following five funds: (i) JPMorgan Mid Cap Value Fund; (ii) JPMorgan Large Cap Growth Fund; (iii)   JPMorgan Value Advantage Fund; (iv) JPMorgan Strategic Income Opportunities Fund; and (v) JPMorgan US Equity Fund (collectively, the "Funds").

Supreme Court in *Jones v. Harris Assocs. L.P.*, 559 U.S. 335 (2010). The large disparity between fees charged to the Funds and to the unaffiliated funds provides support for a plausible inference that the administration fees charged to the Funds are disproportionately large compared to the services provided and outside the range of what could be negotiated at arm's length, as the Court found in *Goodman* with respect to investment advisory fees. And, the failure of the Funds' Board of Trustees (the "Board") to negotiate at arm's length or consider information necessary to properly evaluate the administration fees requires that little deference be given to the Board.

Unable to contest the legitimacy of Plaintiffs' fee comparisons, the Administrator Defendants ignore them and focus on a few select services which they claim are different from the services performed for the unaffiliated funds. However, "this is essentially an evidence-dependent contention that cannot be afforded dispositive force in today's motion-to-dismiss context." *Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, No. 2:14-cv-414, 2015 WL 965665, at *5 (S.D. Ohio Mar. 4, 2015). Moreover, even accepting the Administrator Defendants' contention that those services are not included in the unaffiliated funds' administration agreements or by separate compensation paid by the Funds, those services do not justify the more than $40 million in additional administration fees paid by the Funds each year.

Finally, there is no dispute that the Sub-administrator received compensation for providing administration services to the Funds. Accordingly, it may be held liable under § 36(b). The Sub-administrator's argument that it should be immune from liability because the fees first flow through the Administrator is incompatible with the statutory language and intent of § 36(b), which is to provide additional safeguards and protections to the investing public.

## BACKGROUND REGARDING SECTION 36(b)

Congress adopted the ICA to regulate investment companies, including mutual funds. Typically, a mutual fund is created by an investment adviser, which is an entity separate from the fund. *See Jones*, 559 U.S. at 338. "The adviser selects the fund's directors, manages the fund's investments, and provides other services." *Id*. In this sense, a mutual fund is often referred to as "captive" of its adviser. *Id*. at 349. Recognizing that the relationship between an investment adviser and its captive mutual fund is "fraught with potential conflicts of interest," and concerned about the "potential for abuse" in this structure, Congress enacted protections for mutual fund shareholders in the ICA. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 536-38 (1984) (quotation marks and citations omitted).

Congress amended the ICA in 1970 to provide additional protections to shareholders with respect to the fees charged by investment advisers and their affiliates to their captive mutual funds. Among other amendments, Congress added a new § 36(b), which provides:

> [T]he investment adviser of a [mutual fund] shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by [the mutual fund], or by the security holders thereof, to such investment adviser **or any affiliated person** of such investment adviser.

15 U.S.C. § 80a-35(b) (emphasis added). Section 36(b) creates a private right of action for fund shareholders to enforce the fiduciary duty created by the statute on behalf of the fund. *See id.*

Section 36(b) reflects Congress's determination that "the forces of arms'-length bargaining do not work in the mutual fund industry in the same manner as they do in other sectors of the American economy." S. REP. NO. 91-184, at 4 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4901. This conclusion was based in part on a study of the mutual fund industry by the University of Pennsylvania's Wharton School of Finance and Commerce. *See* A

STUDY OF MUTUAL FUNDS, H.R. REP. NO. 87-2274 (1962) ("Wharton Report").[3]  The Wharton Report determined that "investment advisers often charged mutual funds higher fees than those charged the advisers' other clients," *Daily Income Fund*, 464 U.S. at 537 (citing Wharton Report at 28-30), and the "principal reason for the differences in rates" was that "competitive factors which tend to influence rates charged other clients have not been substantially operative in fixing the advisory fee rates paid by mutual funds."  Wharton Report at 493-94.

Finally, § 36(b) reflects Congress's conclusion that "shareholders should not have to rely solely on the fund's directors to assure reasonable . . . fees...."  *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108 (1991) (internal quotation marks and citation omitted).  Congress established § 36(b) as a "mechanism by which the fairness of" those fees "could be tested in court."  S. REP. NO. 91-184, at 5 (1969), *reprinted in* 1970 U.S.C.C.A.N. 4897, 4901.

## STATEMENT OF RELEVANT FACTS

### Nature and Quality of the Administration Services Provided to the Funds

Defendant JPMFM, an affiliate of JPMIM, serves as the Administrator to the Funds pursuant to an "Administration Agreement," which requires JPMFM to provide certain administration services to each Fund.  ¶¶ 116-117.[4]  Those services include: (a) financial reporting and accounting services; (b) tax services; (c) compliance services; (d) fund governance services; (e) regulatory services; and (f) general administrative services such as providing office space.  ¶ 117; *see also* Exhibit A to the Complaint ("Compl. Ex. A") (Dkt. No. 11).

The Administration Agreement permits JPMFM to subcontract with other entities to provide administration services to the Funds.  ¶ 118.  JPMFM has subcontracted with JPMCB to

---

[3]    Also available at: http://www.sechistorical.org/museum/galleries/tbi/gogo_c.php.

[4]    All ¶ references are to the Complaint (Dkt. No. 1).

serve as the Funds' Sub-administrator. JPMCB receives a portion of the fees paid to JPMFM. ¶ 119.

In exchange for the administration services provided to the Funds, the Administration Agreement requires each Fund to pay an annual fee that is calculated as a percentage of each Fund's assets under management or "AUM." ¶ 120. The administration fee varies by Fund, and ranges from 5.3 basis points (or 0.053%) to 8.2 basis points (or 0.082%). ¶ 121. For the most recent fiscal year, the Funds were charged more than $51 million in administration fees.[5]

**Fees Paid by Other Clients for the Administrator Defendants' Services**

JPMCB and J.P. Morgan Investor Services Co. ("JPMIS"), subsidiaries of JPMorgan Chase, provide administration services to unaffiliated mutual funds, including the ProShares Trust (the "ProShares Funds") and the EQ Advisors Trust (the "EQ Funds" and collectively referred to as the "Unaffiliated Funds"). ¶ 124. The fees for providing administration services to the Unaffiliated Funds are negotiated at arm's length between JPMFM and/or JPMorgan Chase subsidiaries and the sponsors of the Unaffiliated Funds. ¶¶ 179-182.

As shown in the chart attached as Exhibit A to the Complaint (Dkt. No. 11), the administration services provided to the ProShares Funds and the EQ Funds are the same or substantially the same as the administration services provided to the Funds pursuant to the Funds' Administration Agreement. ¶ 127. JPMCB and JPMIS use the same or substantially the same personnel, systems, technology, and other resources in performing administration services for the Unaffiliated Funds as the Administrator Defendants use in performing the same or substantially the same services to the Funds. ¶ 128. Moreover, JPMCB and JPMIS provide

---

[5]     Paragraph 121 of the Complaint contains a typo with respect to the amount of administration fees charged to the Funds. In fiscal year 2015, the Funds paid a total of $51,047,000 in administration fees as reflected in the tables throughout the Complaint. *See* ¶¶ 121, 135, 137, 148, 152. Accordingly, the text of ¶ 121 should read "more than $51 million in administration fees" and not "$36.9 million."

other services, in addition to the administration services described above, to the Unaffiliated Funds that are *not* provided to the Funds pursuant to the Administration Agreement, including trust and accounting services. ¶¶ 129-132.

Despite the substantial overlap of and additional services provided, the fees that JPMCB and JPMIS receive for providing administration services to the Unaffiliated Funds are significantly lower than the fees paid by the Funds for those same or substantially the same services, resulting in the Funds collectively paying as much as $47.6 million in excessive administration fees in fiscal year 2015 alone.  ¶ 135.

The higher fees paid by the Funds pursuant to the Administration Agreement are not justified by any additional services provided to the Funds by the Administrator Defendants or their affiliates.  ¶ 138.  To the extent that any services provided pursuant to the Administration Agreement are not provided to the ProShares Funds or the EQ Funds, such services are *de minimis* and do not justify the as much as $47.6 million in additional administration fees paid by the Funds each year.  ¶¶ 135, 137, 140.

Furthermore, the administration services to be provided pursuant to the Administration Agreement overlap with services to be provided to the Funds by other entities, including certain of JPMFM's affiliates, pursuant to separate contracts and in exchange for separate fees, resulting in the Funds paying duplicative fees for those services.  ¶¶ 153-161.

**Fees Charged By Other Administrators For Administration Services**

Other administrators, such as State Street Bank & Trust Company ("State Street") and U.S. Bancorp Fund Services, LLC ("US Bank"), provide administration services to unaffiliated mutual funds that are the same or substantially the same as the services provided to the Funds pursuant to the Administration Agreement.  ¶ 141-142.  The fees charged by State Street and US

Bank to unaffiliated mutual funds are negotiated at arm's length between them and the unaffiliated mutual funds and are significantly lower than the fees charged to the Funds pursuant to the Administration Agreement for the same or substantially the same administration services. ¶¶ 142-143.

For example, State Street provides administration services to the Met Investors Series Trust and the Metropolitan Series Fund (together, the "MetLife Funds") pursuant to an agreement that requires State Street to provide the same or substantially the same administration services as are provided to the Funds pursuant to the Administration Agreement, including financial management and reporting services, tax services, compliance services, fund governance, regulatory affairs, and general administrative services. ¶¶ 144-145. In addition to those services, the MetLife Funds' agreement also requires State Street to provide accounting services to the MetLife Funds, including calculating each fund's Net Asset Value and maintaining certain books and records. ¶ 146. The administration fee charged to each MetLife Fund is an asset-based fee of 1 basis point (or 0.01%). ¶ 147. If the Funds' administration fees were calculated using the same fee schedule used for the MetLife Funds, the Funds would have paid approximately $43.7 million less in administration fees for fiscal year 2015. ¶ 148.

Similarly, US Bank provides administration services to the Bridge Builder Bond Fund pursuant to an agreement that requires US Bank to provide the same or substantially the same administration services as are provided to the Funds pursuant to the Administration Agreement, including financial management and reporting services, tax services, compliance services, fund governance, regulatory affairs, and general administrative services. ¶¶ 149-150. US Bank charges the Bridge Builder Bond Fund an effective administration fee rate of approximately 1.45 basis points (or 0.0145%). ¶ 151. If the Funds' administration fees were calculated using the

same fee schedule used for the Bridge Builder Bond Fund, the Funds would have paid approximately $40 million less in administration fees for fiscal year 2015.

**Board Approval of the Administration Fees Charged to the Funds**

The Funds' Board has approved the Administration Agreement each year without devoting the time and attention necessary to assess the administration fees charged to the Funds. ¶ 164. The Board passively accepted JPMFM's rationalization for the administration fees charged and did not appropriately examine, among other things, the disparity between fees charged to the Funds and to the Unaffiliated Funds or the fees charged by other administrators for the same or substantially the same services, or any purported justification for such disparities. ¶¶ 167-174.

<u>**ARGUMENT**</u>

**I.       THE APPLICABLE PLEADING STANDARD**

Fed. R. Civ. P. 8 governs the pleading sufficiency of a § 36(b) claim. *See Goodman*, 2015 WL 965665, at *4. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"'[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,' however, it must assert sufficient facts to provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Rhodes v. R&L Carriers, Inc.*, 491 Fed. Appx. 579, 582 (6th Cir. 2012) (alterations in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To satisfy Rule 8(a)(2) and 'survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (internal quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Sixth Circuit "has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading....'" *Rhodes*, 491 Fed. Appx. at 583 (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012)).  A plaintiff's complaint must simply plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 584 (quoting *Iqbal*, 556 U.S. at 678).  When reviewing a motion to dismiss on the pleadings, a district court must "construe the complaint in the light most favorable to the non-moving party and accept all factual allegations as true." *McGlone v. Bell*, 681 F.3d 718, 731 (6th Cir. 2012) (internal quotation marks and citation omitted).

## II.   RULE 8(a) IS SATISFIED WHERE THE FACTS ALLEGED SUPPORT A PLAUSIBLE INFERENCE THAT THE FEES ARE DISPROPORTIONATELY LARGE TO THE SERVICES PROVIDED AND ARE OUTSIDE AN ARM'S-LENGTH NEGOTIATED RANGE

"[T]o face liability under § 36(b), an investment adviser must charge a fee that is so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's length bargaining." *Jones*, 559 U.S. at 346.  Plaintiffs "may state a § 36(b) claim by alleging any combination of facts that plausibly support an inference that a particular fee, given all of the surrounding facts and circumstances, is disproportionately large to the services rendered in exchange for that fee." *In re BlackRock Mut. Funds Advisory Fee Litig.*, No. 14-1165, 2015 WL 1418848, at *4 (D.N.J. Mar. 27, 2015) (internal quotation marks and citation omitted).

"If a plaintiff alleges specific facts about the fees paid to the defendant and their relationship to the services rendered, courts have allowed the complaint to survive a motion to dismiss." *Goodman*, 2015 WL 965665, at *4.  The *Gartenberg* factors, while pertinent, are non-exclusive, and Plaintiffs are not required to plead facts with respect to all of the factors.  *See id.* at *2; *In re BlackRock*, 2015 WL 1418848, at *4; *Zehrer v. Harbor Capital Advisors, Inc.*, No.

14 C 789, 2014 WL 6478054, at *2 (N.D. Ill. Nov. 18, 2014); *Kasilag v. Hartford Inv. Fin. Servs., LLC,* No. 11-1083, 2012 WL 6568409, at *2 (D.N.J. Dec. 17, 2012).

## III.  THE ADMINISTRATION FEES CHARGED TO THE FUNDS ARE OUTSIDE THE RANGE OF WHAT COULD BE NEGOTIATED AT ARM'S LENGTH

The Supreme Court in *Jones* held that courts considering claims under § 36(b) must "use[] the range of fees that might result from arm's-length bargaining as the benchmark for reviewing challenged fees." *Jones*, 559 U.S. at 347.  The Supreme Court further explained that the fees paid by the defendant's other clients should be given "the weight that they merit in light of the similarities and differences between the services that the clients in question require…." *Id.* at 350.  The fees paid by other clients are probative of a breach of fiduciary duty under § 36(b) "where plaintiffs have shown a large disparity in fees that cannot be explained by the different services" provided to other clients.  *Id.* at 350 n.8.  The Supreme Court emphasized that, in order to be probative under § 36(b), the fees used as comparison points must have been the result of negotiations conducted at arm's-length.  *Id.* at 350-51.

### A.  The Large Disparity Between the Administration Fees Charged to the Funds and the Unaffiliated Funds Cannot Be Explained by Any Meaningful Difference in the Administration Services

Consistent with *Jones*, Plaintiffs have alleged that: (1) there is a disproportionately large disparity between the administration fees charged to the Funds and the administration fees charged to certain unaffiliated funds by the Administrator Defendants and other administration service providers for administration services; (2) the disparity cannot be explained by any meaningful differences in the services provided because the same or substantially the same administration services are provided to the Funds as to the unaffiliated funds; and (3) the fees charged to the unaffiliated funds were the result of arm's-length negotiations.

### 1.   The Large Disparity in Fees Charged

Plaintiffs allege that the fees charged to the Funds for the Administrator Defendants' administration services are disproportionately higher than the fees charged to the Unaffiliated Funds for the same or substantially the same services. *See* ¶¶ 124-140.  The fee rates charged by the Administrator Defendants to the Funds are between 5 and 15 times higher than the fee rates charged to the Unaffiliated Funds, with the Funds collectively paying as much as $47.6 million more in fees per year for administration services than they would pay pursuant to the fee schedules of the Unaffiliated Funds. *See* ¶¶ 135, 137.

The fee rates charged to the Funds are also disproportionately higher than the fee rates charged by other administrators to other unaffiliated mutual funds for the same or substantially the same services.  If the Funds' administration fees were calculated using the fee schedules for the MetLife Funds or the Bridge Builder Fund, the Funds would pay as much as $43.7 million less in administration fees annually.  ¶¶ 141-152.

### 2.   The Significantly Higher Fees Charged to the Funds Are Not Justified by Any Meaningful Difference in the Administration Services Provided

Because the same or substantially the same administration services are provided to the Funds and to the Unaffiliated Funds (and by other administrators to other mutual funds), there is no justification for charging the significantly higher fees to the Administrator Defendants' captive funds.  *See* ¶¶ 127-128, Compl. Ex. A.  The Administration Agreement and the agreements with the Unaffiliated Funds require the same or substantially the same types of administration services, including: (a) financial reporting and accounting services; (b) tax services; (c) compliance services; (d) fund governance services; (e) regulatory services; and (f) general administrative services such as providing office space. ¶ 117; *see also* Compl. Ex. A.  Further, JPMCB and JPMIS employ the same or substantially the same personnel, systems,

technology, and other resources in performing fund administration services for the Unaffiliated Funds as the Administrator Defendants use in performing the same or substantially the same services for the Funds. ¶ 128. The significantly higher fees charged to the Funds, therefore, cannot be explained by any meaningful difference in administration services. ¶¶ 138-140.

Assessing analogous allegations, the Court in *Goodman* denied JPMIM's motion to dismiss, finding:

> Plaintiffs have pled a notable disparity in the fees obtained for servicing the three funds with which they are involved and the subadvised funds, while concurrently pleading that the services provided to and resources involved in all of the funds are substantially the same. This latter point is important because it is the work done and not the label given to the work that will likely and ultimately prove dispositive of Plaintiffs' claims.

*Goodman*, 2015 WL 965665, at *5.

### 3. Unaffiliated Funds' Fees Were Negotiated at Arm's Length

The Administrator Defendants do not contest that the fees charged to the Unaffiliated Funds are the result of arm's-length negotiations. The sponsors of the Unaffiliated Funds select administrators, such as JPMFM, through a competitive selection process (¶ 181), and they negotiate at arm's length with those administrators regarding the fee rates charged to provide administration services to them (¶ 180), including exchanging proposals and counterproposals and seeking reductions in the fee rates charged (¶ 182).

The results of those arm's-length negotiations is that the Administrator Defendants charge fees to the Unaffiliated Funds that are significantly lower than those charged to the Funds. Inasmuch as the administrative fees paid by the Unaffiliated Funds are negotiated at arm's length and are not lower due to any meaningful difference in the administration services provided, those fees provide the range of fees that could be negotiated at arm's length for Defendants' administration services. *See Jones*, 559 U.S. at 349.

Nor do the Administrator Defendants contest that the fees charged by other administrators, such as State Street and US Bank to unaffiliated funds, are negotiated at arm's length. Those fees provide further support for the arm's-length fee range.  ¶¶ 141-152.

### B. Plaintiffs' Fee Comparisons Support a Plausible Inference that the Administration Fees Charged to the Funds Are Excessive

That the Funds, captive to the Administrator Defendants, pay approximately $40-$48 million more in fees each year at issue for administration services than independent unaffiliated funds pay for the same or substantially the same services supports the inference that the Funds' fees are disproportionately large and outside the range of what could be negotiated at arm's length for Defendants' administration services.  *See Jones*, 559 U.S. at 350 & n.8.

Every district court, including this Court, that has recently addressed analogous allegations in connection with claims for excessive advisory fees  has found such allegations sufficient to state a claim under § 36(b).  *See, e.g.*, *Goodman*, 2015 WL 965665; *In re Davis New York Venture Fund Fee Litig.*, No. 14 CV 4318, 2015 WL 7301077 (S.D.N.Y. Nov. 18, 2015); *The Lynn M. Kennis Trust v. First Eagle Inv. Mgmt., LLC*, No. 14-585, 2015 WL 5886178 (D. Del. Oct. 8, 2015) ("*First Eagle*"); *In re BlackRock*, 2015 WL 1418848.

Courts have also denied motions to dismiss in cases where an investment adviser charged its captive funds a fee rate substantially higher than the fee rate it paid to an independent subadviser to perform the same or substantially the same services.  *See, e.g.*, *Redus-Tarchis v. New York Life Inv. Mgmt. LLC*, No. 14-7991, 2015 WL 6525894 (D.N.J. Oct. 28, 2015); *Zehrer*, 2014 WL 6478054; *Am. Chem. & Equip., Inc. 401(K) Ret. Plan v. Principal Mgmt. Corp.*, No. 4:14-cv-00044, 2014 WL 5426908 (S.D. Iowa Sept. 10, 2014); *Kasilag*, 2012 WL 6568409.

The Administrator Defendants do not discuss, let alone distinguish, any of the aforementioned cases.  In arguing that the Complaint does not state a claim for excessive

13

administration fees, the Administrator Defendants cite only one § 36(b) case on the last page of their brief. *See Turner ex. Rel. Davis New York venture Fund v. Davis Selected Advisers, LP*, No. 13-15742, 2015 WL 5692324 (9th Cir. Sept. 29, 2015) ("*Turner*"). However, *Turner* does not support dismissal of Plaintiffs' claims. There, the Ninth Circuit affirmed the dismissal of claims which it found were "grounded in inapt comparisons." *Id.* at *2. In contrast, Plaintiffs' comparisons here are grounded entirely on the type of arm's-length fee rates that the Supreme Court instructs are "the benchmark for reviewing challenged fees." *Jones*, 559 U.S. at 347. In fact, § 36(b) claims with respect to the same fund at issue in *Turner* were upheld in a subsequent action where the plaintiffs pled the appropriate fee comparisons, analogous to those pled by Plaintiffs here. *See In re Davis*, 2015 WL 7301077.[6]

### C.    The Administrator Defendants' Arguments Regarding Purported Differences in Services, At Most, Raise Questions of Fact

The Administrator Defendants' argument that the Complaint does not state a claim against them based on purported differences in services is "an evidence-dependent contention" that this Court held "cannot be afforded dispositive force in today's motion-to-dismiss context." *Goodman*, 2015 WL 965665, at *5. Other courts presiding over § 36(b) cases have consistently found such arguments incapable of resolution at the pleading stage. *See, e.g., In re Davis*, 2015 WL 7301077, at *5; *Redus-Tarchis*, 2015 WL 6525894, at *7; *First Eagle*, 2015 WL 5886178, at

---

[6]    Lacking any authority in its favor addressing § 36(b) claims founded upon allegations parallel to those here, the Administrator Defendants rely on a decision by this Court in an ERISA case (the same case relied on by JPMIM in unsuccessfully arguing for dismissal). In *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 2d 861 (S.D. Ohio 2009), plaintiffs asserted two causes of action under ERISA based upon allegations that "Defendants' misconduct impaired the value of the Plan assets held in their individual accounts." *Id.* at 865. The Court dismissed both counts after finding that there is "nothing in ERISA" that prohibited the defendant's actions in selecting investment offerings for a retirement plan. *Id.* at 866-67. The facts and holding in that case have no applicability to allegations regarding excessive fees under § 36(b) of the ICA.

*5; *In re BlackRock*, 2015 WL 1418848, at *5 n.5; *Curd ex rel. SEI Int'l Equity Fund v. SEI Inv. Mgmt. Corp.*, No. 13-7219, 2015 WL 4243495, at *5 (E.D. Pa. July 14, 2015); *Zehrer*, 2014 WL 6478054, at *4; *Am. Chem.,* 2014 WL 5426908, at *6; *Kasilag*, 2012 WL 6568409, at *3.

As the Court explained in denying JPMIM's motion to dismiss, "the issue is whether, taken as a whole, Plaintiffs' complaint pleads sufficient facts about the fees paid to Defendant and their relationship to the services rendered to present a plausible claim that the fees are so disproportionately large." *Goodman*, 2015 WL 965665, at *5. Plaintiffs have made the same showing with respect to the administration fees and services as the plaintiffs in *Goodman* made with respect to the advisory fees and services. Accordingly, the Administrator Defendants' motion to dismiss warrants denial.

While the Administrator contends that a comparison of the Administration Agreement with the administration agreements for the Unaffiliated Funds "refutes any suggestion that the services provided are the same" (Def. Br. at 10), the Administrator Defendants completely ignore the thirteen-page chart detailing the substantial overlap with respect to dozens of administration services required by the Administration Agreement and those that the Administrator Defendants perform for the Unaffiliated Funds. Compl. Ex. A (Dkt. No. 11).[7] Instead, the Administrator Defendants cite a handful of services which they claim are not included among the services provided to the Unaffiliated Funds or among the services provided by other administrators. Def.

---

[7]     *Butler v. Aetna U.S. Healthcare, Inc.,* 109 F. Supp. 2d 856 (S.D. Ohio 2000), cited by the Administrator Defendants (Def. Br. at 9 n.26), is not remotely analogous. There, plaintiff challenged defendants' effort to recoup an overpayment that the plaintiff had received under an employee welfare benefit plan by withholding the plaintiff's monthly disability benefits. *Id.* at 857. Plaintiff alleged that the plan in question "does not permit the Defendants to recoup an overpayment of disability benefits by withholding a participant's future benefits as they accrue." *Id.* at 859. The court dismissed the claims, finding that the controlling benefit plan documents "undeniably" permit defendants to recover an overpayment of benefits. *Id.* at 860. Here, the administration agreements do not "refute" any of Plaintiffs' allegations; rather, they demonstrate that the core administration services provided are the same or substantially the same for the Funds as for the Unaffiliated Funds. ¶¶ 127, 128, Compl. Ex. A.

Br. at 10-12. However, even if the Administrator Defendants were correct, these select services do not justify the additional $40 million or more in administration fees paid by the Funds. As the court in *In re BlackRock* explained:

> While BlackRock argues that Plaintiffs' assertions are clearly rebutted by the IMAs, the Court disagrees. Even if the Court were to assume that BRA [BlackRock] provided additional services under the IMA, **the Court would also have to assume that the fee retained by BRA was proportionate to the services it performed.** Having reviewed the relevant agreements, there is nothing in either the agreements or the pleadings that establish or assert that BRA's responsibilities in supervising the Funds are so "plainly substantial" as to warrant retaining its portion of the advisory fee, meaning that the Court would have to assume-based on the size of the Funds only-that the advisory fee was reasonable.

2015 WL 1418848, at *5 n.5 (emphasis added). This is especially so here in light of Plaintiffs' allegations that: (a) for a significantly lower fee, the Administrator Defendants provide additional services to the Unaffiliated Funds that are not provided to the Funds (¶¶ 129-132, 139); and (b) the Funds pay fees under separate agreements for services which overlap with services to be provided to the Funds under the Administration Agreement, including many of the same services cited by the Administrator Defendants (¶¶ 153-161).[8]

Finally, the Administrator Defendants' attempt to attribute any importance to the Administration Agreement's "catch-all provision" fails. Def. Br. at 10, 12. The Administrator Defendants do not claim that they actually perform any additional services pursuant to this provision, only that they **may** perform some, unspecified services "to the extent administrative

---

[8] For example, while the Administrator cites the "Preparation of communications to shareholders" as an additional service it performs under the Administration Agreement (Def. Br. at 10), the Funds also pay fees relating to shareholder communications pursuant to a separate Shareholder Servicing Agreement. ¶¶ 154-157. The Administrator Defendants suggest that the Administration Agreement and the Shareholder Servicing Agreement cover different communications, but they do not identify any specific types of communications that are provided pursuant to the Administration Agreement and not pursuant to the Shareholder Servicing Agreement. *See* Def. Br. at 13. This dispute underscores the fact-intensive nature of the Administrator Defendants' argument.

services and functions are not provided" in other agreements.  *Id*. at 10.  Thus, the mere existence of this provision says nothing about the services actually performed.  *See Goodman*, 2015 WL 965665, at *5 ("[I]t is the work done and not the label given to the work that will likely and ultimately prove dispositive of Plaintiffs' claims.").

## IV.  THE SUB-ADMINISTRATOR, JPMCB, RECEIVED FEES AND THEREFORE IS LIABLE UNDER SECTION 36(b)

JPMCB's argument that it cannot be held liable because the allegedly excessive administration fees pass first through the Administrator (Def. Br. at 5-8) is nonsensical and incompatible with the statutory language of or intent behind § 36(b).

Section 36(b) provides that the investment advisor of a registered investment company has a "fiduciary duty with respect to the receipt of compensation for services" paid by the fund or its shareholders to the investment advisor **or its affiliates**.  15 U.S.C. § 80a-35(b).  In addition, § 36(b) authorizes a private cause of action by a shareholder on behalf of the fund against the investment advisor, "**or any affiliated** person of such investment advisor," for "breach of fiduciary duty in respect of…compensation" paid by the fund to the investment advisor **or** its affiliates.  *Id*. (emphasis added).

In this case, there is no dispute that both Administrator Defendants are affiliates of the investment advisor (JPMIM) and are recipients of administration fees paid by the Funds.  The fact that the fees are first paid to JPMFM and a portion of the fees is then paid to JPMCB does not render JPMCB immune from liability.

Thus, if Plaintiffs prove that the Administrator Defendants received excessive administration fees, JPMCB cannot evade liability simply because it received its portion of excessive fees through JPMFM.  Indeed, one case cited by JPMCB supports that position.  In *Zucker ex rel. AIM Small Cap Growth Fund/A v. AIM Advisors, Inc.*, 371 F. Supp. 2d 845 (S.D.

17

Tex. 2005), the plaintiff brought a § 36(b) claim against an investment advisor alleging that it collected excessive marketing and distribution fees.  The investment advisor, though, had not received any such fees "from **or in connection with** the Funds."  *Id*. at 848.  Although the court dismissed the claim against the investment adviser, it granted plaintiff leave to add as a defendant the affiliate that did receive the fees.  Here, there is no question that JPMCB received fees "in connection with" the Funds.  *Id*. at 849.

None of the other cases cited by JPMCB support its argument that only "direct" recipients of the allegedly excessive fees can be held liable under § 36(b).  Those cases were dismissed because there was no allegation that the persons or entities sued received **any** of the challenged fees, directly or indirectly, not because the defendant was an "indirect" recipient.  *See Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 405 (6th Cir. 2014) ("Because BFA is not the 'recipient' of the 35% lending fee, the plain text of Section 36(b)(3) strongly suggests that no action may be brought against BFA on the basis of the fee charged by BTC."), *cert denied*, 135 S. Ct. 1500 (2015); *Mintz v. Baron*, No. 05 Civ. 4904, 2006 WL 2707338, at *3 (S.D.N.Y. Sept. 19, 2006) ("[T]here is no allegation that BAMCO received any 12b-1 fees and Count I will, accordingly, be dismissed as against BAMCO."); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 259 (S.D.N.Y. 2006) ("Plaintiffs have failed to allege that the Distributor Defendant or the Trustee/Officer Defendants received compensation for investment advisory services."); *In re Dreyfus Mut. Funds Fee Litig.,* 428 F. Supp. 2d 342, 351 (W.D. Pa. 2005) ("There is not even the fundamental allegation that the Director Defendants received compensation for advisory services, putting them within the reach of section 36(b)…."); *Pfeiffer v. Integrated Fund Servs., Inc.*, 371 F. Supp. 2d 502, 509 (S.D.N.Y. 2005) ("[N]owhere in his complaint does Pfeiffer allege that Englehart and Bloom have received administrative and/or

transfer agent fees"); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 238 (S.D.N.Y.) ("Count Three is dismissed against the Investment Adviser Defendants and the Trustee Defendants because they were not the alleged recipients of the disputed payments."); *Green v. Fund Asset Mgmt., L.P.*, 147 F. Supp. 2d 318, 329 (D.N.J. 2001) (dismissing claim against officer defendants who did not receive advisory fee compensation from the funds), *aff'd sub nom. Green v. Fund Asset Mgmt, L.P.*, 286 F.3d 682 (3d Cir. 2002).[9]

Unlike in those cases, the Sub-administrator here received a portion of the allegedly excessive fees paid by the Funds (¶¶ 119, 122), thereby rendering the Sub-administrator liable under § 36(b). To hold otherwise would enable defendants to avoid liability under § 36(b) by immediately transferring mutual fund fees from the direct recipient to an affiliated entity.[10]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Administrator Defendants' motion to dismiss.

Dated:  January 14, 2016

MEYER WILSON CO., LPA

_/s/ Matthew R. Wilson_____
David P. Meyer (Ohio Bar #0065205)
Matthew R. Wilson (Ohio Bar # 0072925)
Michael J. Boyle, Jr. (Ohio Bar #0091162)
1320 Dublin Road, Suite 100
Columbus, OH 43215
Tel: (614) 224-6000
Fax: (614) 224-6066

---

[9] The remaining cases cited by JPMCB simply reference the statutory text of § 36(b) that damages may be recovered only against the "recipient" of the compensation. *See Green v. Fund Asset Mgmt., L.P.*, 245 F.3d 214, 226 n.11 (3d Cir. 2001); *Krinsk v. Fund Asset Mgmt., Inc.*, 875 F.2d 404, 413 (2d Cir. 1989).

[10] *See* S. REP. NO. 91–184 (1970), *reprinted in* 1970 U.S.S.C.A.N 4897, 4910–11 ("This provision affords a remedy if the investment adviser should try to evade liability by arranging for payments to be made not to the adviser itself but to an affiliated person of the adviser.").

**ZWERLING, SCHACHTER &
ZWERLING, LLP**
Robin F. Zwerling
Jeffrey C. Zwerling
Susan Salvetti
Andrew W. Robertson
Ana M. Cabassa-Torres
41 Madison Avenue
New York, NY 10010
Tel: (212) 223-3900
Fax: (212) 371-5969

**ROBBINS ARROYO, LLP**
Stephen J. Oddo
Gregory Del Gaizo
600 B Street, Suite 1900
San Diego, CA 92101
Tel: (619) 525-3990
Fax: (619) 525-3991

*Attorneys for Plaintiffs*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Bradley Thomas Ferrell | ferrell@litohio.com |
| Stephen Walter Tigges | tigges@litohio.com |
| John Walcott Zeiger | zeiger@litohio.com |
| Mark Holland | mholland@goodwinprocter.com |
| Michael K. Isenman | misenman@goodwinprocter.com |

*/s/  Matthew R. Wilson*
Matthew R. Wilson

*Attorney for Plaintiffs*